**NEW YORK CENT. R. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION et al., Interveners).**

(District Court, D. Massachusetts. April 23, 1923.)

No. 1808.

1. Commerce ⬅88—Order of Interstate Commerce Commission, requiring issuance of interchangeable mileage tickets at reduced rates, held invalid.

Interstate Commerce Act, § 22, as amended by Act Aug. 18, 1922, by directing the Interstate Commerce Commission to require the issuance by interstate carriers of interchangeable mileage or scrip coupon tickets, does not require the Commission to order such tickets to be issued at reduced rates, but at "just and reasonable rates," to be determined by the Commission, and an order made thereunder, requiring the issuance of such tickets at reduced rates, not fixed by the Commission in the exercise of its own independent judgment, but based on an erroneous interpretation of the statute, or on the assumed intention of Congress, is without warrant of law.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Commerce ⊚⊸5—Act providing for issuance of interchangeable passenger tickets held constitutional.**

Act Aug. 18, 1922, amending Interstate Commerce Act, § 22, by directing the Interstate Commerce Commission to require interstate carriers of passengers to issue interchangeable mileage or scrip coupon tickets, *held* within the constitutional power of Congress to regulate interstate commerce.

In Equity. Suit by the New York Central Railroad Company and others against the United States, with the Interstate Commerce Commission and the National Council of Traveling Salesmen's Associations as intervening respondents. Permanent injunction granted.

Francis I. Gowen, of Philadelphia, Pa., Clyde Brown, of New York City, Edward G. Buckland, of New Haven, Conn., H. A. Taylor, of New York City, Henry Wolf Bikle, of Philadelphia, Pa., Parker McCollester, of New York City, and Chas. F. Choate, Jr., Fred'k H. Nash, and James Garfield, all of Boston, Mass., for petitioners.

James M. Beck, Sol. Gen., and Blackburn Esterline, Asst. Sol. Gen., both of Washington, D. C., and Robert O. Harris, U. S. Atty., of Boston, Mass., for the United States.

P. J. Farrell, of Washington, D. C., for Interstate Commerce Commission.

Samuel Blumberg, of New York City, and Hoke Smith, of Washington, D. C. (James N. Clark and Powers & Hall, all of Boston, Mass., of counsel), for National Council of Traveling Salesmen's Ass'ns.

Before MACK, Circuit Judge, and MORRIS and BREWSTER, District Judges.

PER CURIAM. [1] While this case came on to be heard on motion of petitioners for a temporary injunction to restrain the enforcement of an order of the Interstate Commerce Commission, and on motion of the United States to dismiss the petition, it was agreed at the argument that the cause should be deemed submitted for final hearing. The case involves the constitutionality of the act. The suit is to annul an order of the Interstate Commerce Commission made March 6, 1923.

The Interstate Commerce Commission was directed, under the amendment of section 22 of the Interstate Commerce Act, approved August 18, 1922 (42 Stat. 827), to require, after notice and hearing, each carrier by rail subject to the act to issue, at such offices as may be prescribed by the Commission, interchangeable mileage or scrip coupon tickets at just and reasonable rates, good for passenger carriage upon passenger trains of all carriers by rail subject to the act, with the privilege of granting certain exemptions as provided therein.

Pursuant to this amendment, proceedings were instituted by the Commission, and as a result thereof the carriers named, except as exempted by the Commission, were ordered to issue nontransferable interchangeable scrip coupon tickets in denominations of $90, obtainable at a reduction of 20 per cent. from the face value thereof.

⊚⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Although the carriers opposed any reduction in rates for the scrip coupons below the standard rates, it is clear from the record that the Commission proceeded on the assumption that the spirit and theory of the congressional amendment required them to order the scrip coupons to be issued at reduced rates, at least in so far as such rates could not be deemed confiscatory. There is no finding in the record that would indicate that the Commission, if it had exercised an independent judgment, apart from what it conceived to be the plain spirit and theory of the amendment, would have ordered the scrip coupons to be issued at reduced rates. The only finding of the Commission that could possibly be relied upon as indicating that the Commission exercised an independent judgment is the statement in the majority report that:

"In addition to the obvious spirit of the law, the record warrants the view that a coupon ticket at a reasonably reduced fare should be established, at least for an experimental period."

But this finding is followed by the statement that:

"In no other way can the apparent purpose of the law be given practical effect."

It would seem fairly plain, therefore, that the furthest the Commission goes in its finding is to conclude that the record might justify the issuance of coupons at reasonably reduced rates for an experimental period; but there is nothing to indicate that the Commission, if it had felt free to exercise its own judgment, would have assumed the responsibility for establishing the reduced rate, even for an experimental period.

It is not entirely clear whether the majority of the Commission acted under an interpretation of the amendment that it was mandatory upon them so to reduce the rates for interchangeable scrip coupons tickets, or upon an assumed desire of the Congress, though not expressed by the amendment in mandatory form, that they should so do. In our judgment, the amendment is not mandatory in this respect. It does not prescribe that such coupons shall be issued at a reduced rate. Attempts to fix specific reduced rates by legislation were defeated. If the Congress had intended that some reduction should be mandatory, leaving only the amount thereof to be determined by the Commission under the phrase "just and reasonable," such intent could readily have been expressed in clear language. The fair and natural interpretation of the language used by the Congress makes mandatory the issuance of such coupons at just and reasonable rates; but the ultimate, if not the original, determination of what shall be just and reasonable rates for such coupons is placed entirely upon the Commission.

If, therefore, the Commission acted upon a different interpretation of the amendment, an error of law was the basis of its action and order. "The question is of the meaning of a statute, and upon that, of course, the courts must decide for themselves." Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U. S. 97, 40 Sup. Ct. 504, 64 L. Ed. 801. If, on the other hand, it acted upon the interpretation which we have found to be the correct interpretation of the amendment, but based its conclusions, not upon its own independent judgment, but upon what it believed to be the spirit and purpose of

the act, which, if it means something other than a sound interpretation of the act, must mean some supposed desire of the Congress, it acted contrary to law in abdicating the functions vested in it.

In either case, its order is without warrant of law, and for this reason it must be annulled.

[2] The amendment itself is attacked as unconstitutional, in that in requiring the interchangeable scrip coupons it compels an interchange of credit between the railroads and thereby compels a service at the risk of complete financial loss in case of the insolvency of the road from which the scrip may have been purchased. In our judgment, the decisions of the Supreme Court upholding the Carmack Amendment (Atlantic Coast Line R. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. [N. S.] 7), the right of a Legislature to compel the interchange of cars (Michigan Central R. R. Co. v. Michigan R. R. Commission, 236 U. S. 615, 35 Sup. Ct. 422, 59 L. Ed. 750), and of Congress to compel the establishment of joint rates (St. Louis Southwestern Ry. Co. v. U. S., 245 U. S. 136, 38 Sup. Ct. 49, 62 L. Ed. 199), necessarily involve the determination of the right to compel an interchange of credits as between the roads despite the possible loss from such an insolvency. As the Commission points out, the railroads themselves have maintained the interchangeable scrip coupons established under government operation, and have thus voluntarily established a similar interchange of credits over all roads except electric and short line carriers. Under the present amendment, the extent of such credit interchange is left to the Commission, and must, of course, be reasonable; but in requiring the interchange in respect to the scrip coupons, the action of Congress must be upheld as a constitutional exercise of power within the aforesaid decisions.

A permanent injunction will therefore be granted against the enforcement of the order of the Commission.