UNITED STATES, INTERSTATE COMMERCE COMMISSION, NATIONAL COUNCIL OF TRAVELING SALESMEN'S ASSOCIATIONS, ET AL. *v.* NEW YORK CENTRAL RAILROAD COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 469.  Argued January 9, 10, 1924.—Decided January 21, 1924.

1. Under the Act of August 18, 1922, amending § 22 of the Interstate Commerce Act, the rates for interchangeable mileage coupon tickets must be just and reasonable.  P. 609.
2. Where the Commission's conclusion that a reduced rate fixed by it for such tickets was just and reasonable was contradicted by its findings of fact and was obviously based on a misconception of the amendment as requiring a reduction, *held,* that the conclusion was one of law and not binding on the court.  *Id.*

288 Fed. 951, affirmed.

APPEAL from a decree of the District Court which enjoined enforcement of an order of the Interstate Commerce Commission requiring the appellee railroads to issue scrip coupon tickets at reduced rates.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. Attorney General Daugherty* was on the brief, for the United States.

Laying hold of the following language of the Commission, " The spirit and the apparent theory of the law is

that carriers shall be required to sell such a ticket at something less than the standard fare, which would be just and reasonable because it would be sold in such quantities as to stimulate trável and thereby increase net revenue . . . ," the District Court held " it is clear " the Commission proceeded on the assumption " that the spirit and theory of the congressional amendment required them to order the scrip coupons to be issued at reduced rates . . . ." Apparently because of those words in the report, and that only, the order was annulled.

For a case of such great public importance, this would seem a narrow and technical view on which to overthrow the order. The District Court assumed that the Commission ignored its own order of August 23, 1922, fixing a hearing on the question, *inter alia,* " What rate or rates shall be established as just and reasonable for each or either form of ticket? "; that the Commission shut its eyes to the voluminous testimony and exhibits before it; that the language of the Commission, " In addition to the obvious spirit of the law, the record warrants the view that a coupon ticket at a reasonably reduced fare should be established at least for an experimental period," and " we further find that the rates resulting from the reduction will be just and reasonable for this class of travel," does not mean what it says.

There is no charge in the petition that the order is without substantial evidence to support it. The adequacy of the hearing before the Commission is not questioned.

The history of the times under which Congress acted must be considered. Reference to committee reports and debates of senators and representatives is permissible. *Stafford* v. *Wallace,* 258 U. S. 495; *United States* v. *Trans-Missouri Freight Assn.,* 166 U. S. 290; *Standard Oil Co.* v. *United States,* 221 U. S. 1. See also *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Chicago Board of Trade* v. *United States,* 246 U. S. 231. [Counsel then referred at

length to proceedings in the House and Senate; also to the report of the Commission in this case, and to its earlier reports on mileage and commutation tickets.]

Charges similar to those here made have already been exploded in the *New England Divisions Case*, 261 U. S. 184.

The arguments that the reduced rate is unreasonable appear to rest on the insecure foundation that, because the Commission granted increased rates in former years, which it found just and reasonable, any reduced rates, in whatever form, must necessarily be unreasonable, confiscatory, and void.

It is a new theory that the power of Congress and the Commission is limited to rate regulation in the sense that the rate must be made final in the outset. From the beginning a rate fixed by the Commission or otherwise has been expressly made subject to recovery after payment by the shipper when shown to be excessive. Reparation in large sums has frequently been awarded by the Commission and recovered through the courts.

The amendment should be construed in the light of Title IV of the Transportation Act.

The reasonableness of a rate when based on substantial evidence is a question of fact. Nor will the Court consider the weight of the evidence or the wisdom of the order.

The Commission had the right to look to " the spirit and apparent theory of the law," and the District Court erred in holding that it rested its order on that alone. *Atlantic Coast Line R. R.* v. *Burnette*, 239 U. S. 199; *Williams* v. *United States Fidelity Co.*, 236 U. S. 549; *United States* v. *Farenholt*, 206 U. S. 226; *McDougal* v. *McKay*, 237 U. S. 372; *Porto Rico Ry. Co.* v. *Mor*, 253 U. S. 345; *Eastern Extension Tel. Co.* v. *United States*, 231 U. S. 326; *Interstate Drainage* v. *Board Commissioners*, 158 Fed. 270.

The act of Congress and the order of the Commission create no new principle unfamiliar to either carriers passengers in transportation. *Commutation Rate Case,* 27 I. C. C. 549; *Interstate Commerce Comm.* v. *Baltimore & Ohio R. R. Co.,* 145 U. S. 263; *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173 U. S. 684; *Pennsylvania R. R. Co.* v. *Towers,* 245 U. S. 6; *Intermountain Rate Cases,* 234 U. S. 476, 485, 494.

The temporary nature of the order, in that it may undergo a revision after a one-year test, is in favor of the carriers rather than against them. *New England Divisions Case,* 261 U. S. 184, 201.

The order should be made effective, that the companies may try out the rates and report results to the Commission, thus to establish the facts upon which the rights of the parties shall ultimately depend. *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19; *Northern Pacific Ry. Co.* v. *North Dakota,* 216 U. S. 579; *Missouri Rate Cases,* 230 U. S. 474; *In re Louisville,* 231 U. S. 639; *Minnesota Rate Cases,* 230 U. S. 352; *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 153; *Stanislaus County* v. *San Joaquin Co.,* 192 U. S. 201.

The exemption of certain carriers is not arbitrary. *Wilson* v. *New,* 243 U. S. 332; *Stafford* v. *Wallace,* 258 U. S. 495.

The order does not apply to and include transportation of passengers wholly within one State.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

The Commission is not, as a matter of law, required to report the minor facts upon which its conclusions of fact are based. *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457, 489.

The order does not require appellees to perform services for a noncompensatory rate, or to establish and main-

tain a rate which will be unreasonable, unjustly discriminatory, or unduly preferential and prejudicial.

The order is not in conflict with the duty imposed upon the Commission by § 15a of the Interstate Commerce Act.

The Commission, clearly, would not have made the order if it had not been convinced that compliance with its terms would increase the passenger business of the appellees and other carriers to an extent sufficient to more than offset any loss in revenue which would otherwise result from a reduction in the rate of fare.

Where the evidence is such as to justify differences in opinion, the Court will not substitute its judgment for the judgment of the Commission as to an administrative matter within the Commission's jurisdiction. It will refrain from interfering until after opportunity has been afforded for a proper test. *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19.

The order is not invalid because it requires carriers to establish between themselves, without their consent, the relation of principal and agent and creditor and debtor. *Atlantic Coast Line R. R. Co.* v. *Riverside Mills,* 219 U. S. 186.

The order is not rendered invalid because the interchangeable scrip coupon ticket provided for applies to transportation regardless of the extent to which the ticket may be used on a particular line.

The fact that certain carriers are exempted from the operation of the order does not render the order invalid. *Interstate Commerce Comm.* v. *Chicago, Rock Island & Pacific Ry. Co.,* 218 U. S. 88.

The order does not apply to the transportation of passengers wholly within one State. The Court will not presume that the Commission intended to make the order apply to matters not within its jurisdiction. *Texas* v. *Eastern Texas R. R. Co.,* 258 U. S. 204.

*Mr. Chas. F. Choate, Jr.,* with whom *Mr. Francis I. Gowen, Mr. Clyde Brown, Mr. Edward G. Buckland, Mr. H. A. Taylor,* *Mr. Henry Wolf Biklé, Mr. Parker McCollester, Mr. Frederick H. Nash* and *Mr. James Garfield* were on the brief, for appellees.

*Mr. Hoke Smith,* with whom *Mr. Samuel Blumberg, Mr. Arthur M. Loeb, Mr. Jerome Wilzin* and *Mr. Charles Fischer* were on the brief, for National Council of Traveling Salesmen's Associations, appellant.

*Mr. Leon B. Lamfrom,* by leave of Court, filed a brief as *amicus curiae.*

*Mr. Clifford Thorne* and *Mr. James W. Good,* by leave of Court, filed a brief as *amici curiae.*

Mr. JUSTICE HOLMES delivered the opinion of the Court.

This is a bill in equity brought by railroad companies to prevent the enforcement of an order of the Interstate Commerce Commission dated March 6, 1923, following reports of January 26 and March 6, 1923.. 77 I. C. C. 200. *Ibid.* 647. The order purports to be made in pursuance of the Act of August 18, 1922, c. 280; 42 Stat. 827. This act amended § 22 of the Interstate Commerce Act by adding to what became (1), two paragraphs, viz.: (2), directing the Commission to require the railroads subject to the act, with such exemptions as the Commission holds justified, to issue interchangeable mileage or scrip coupon tickets at just and reasonable rates, in such denominations as the Commission may prescribe, with regulations as to use and prescribing whether the tickets are transferable or not transferable, and, if the latter, what identification may be required, and what baggage privileges go with such tickets; (3) making it a misdemeanor for any carrier to refuse to issue or accept such tickets

as required, or to conform to the Commission's rules, or
for any person wilfully to offer for sale or carriage any
such tickets contrary to such rules. After a hearing, the
Commission ordered the railroads specified, being all the
railroads having annual operating revenues in excess of
$1,000,000 and known as Class 1, to issue, at designated
offices, a non-transferable, interchangeable, scrip coupon
ticket in the denomination of $90, which shall be sold at
a reduction of 20 per cent. from the face value of the
ticket.

The bill alleges that the amendment of 1922, as con-
strued by the Commission, is contrary to the Fifth
Amendment and to the commerce clause, Art. I, § 8, of
the Constitution, but that, properly construed, it does not
authorize the order made. The order is alleged to apply
to intrastate carriage, and also to be inconsistent with § 2
of the Interstate Commerce Act, which requires like
charges for like service in similar circumstances; with § 3,
forbidding unreasonable preferences; with § 15a, provid-
ing for the establishing of rates for rate groups that will
earn a fair return upon the aggregate value of the prop-
erty used in transportation; (see *Increased Rates, 1920,*
cited as *Ex parte 74,* 58 I. C. C. 220; *Reduced Rates,
1922,* 68 I. C. C. 676;) and with §§ 1 and 22, requiring
the Commission to establish just and reasonable fares.
These averments are developed in detail, but we do not
dwell upon them, because the decision below, and our
own, turn upon a different point. It is further alleged
in the bill that the conclusion stated by the Commission,
that the reduced rates established by it for scrip coupon
tickets will be just and reasonable for that class of travel,
is contrary to the specific facts found by the Commission,
and is not to be taken as an independent finding of fact,
but only as a conclusion or ruling reached by it upon a
misinterpretation of the law. This was the view taken
by the three judges who sat in the District Court. They
74308°—24——39

held that the Commission considered that the amendment of 1922 either required it to make a reduction, or at least showed a spirit and purpose that should be deferred to, and on that ground came to a result that otherwise would not have been reached. They held that, therefore, the order could not stand, considering that the amendment of 1922 like the rest of the Interstate Commerce Act called for an unbiassed opinion upon the merits of the case. They issued a perpetual injunction, and the defendants appealed. 288 Fed. 951.

We are of opinion that the interpretation of the statute in the Court below was right. There is no doubt that the bill owed its origin to a movement on the part of travelling salesmen and others to obtain interchangeable mileage or scrip coupon books at reduced rates. The bill that was passed originally fixed reduced rates, but it was amended to its present form undoubtedly because the prevailing opinion was that the rates should be determined in the usual way by the usual body. The object of the travelling salesmen was defeated in so far as Congress declined to take any step beyond authorizing the issue of scrip tickets. Coming as it did from the agitation for this form of reduced fares, the statute naturally enough carried with it more or less mirage of fulfilling the hope that gave it rise, but in fact it required a determination of what was just and reasonable exactly as in any other case arising under the Interstate Commerce Act. The original purpose of the amendment as introduced retained headway enough to require the issue of scrip, but there the purpose was stopped, and, as not infrequently happens in legislation, the matter was left otherwise where it was before. Apart from constitutional difficulties, *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173 U. S. 684, the whole tendency of the law has been adverse to the enactment as proposed, at least unless a clear case should be made out.

The Commission in its report pointed out that the net railway operating income for the seven months ending July 31, 1922, was below the return fixed as reasonable, discarded the supposed analogy between the carload rate and the interchangeable scrip or mileage ticket, intimated that the supposed benefit that the carrier might get from the advance use of the money would be more than offset by the increased expenses, and sa'd that the question whether the scrip ticket would stimulate travel sufficiently to meet any loss that might result must remain a matter of speculation until an experiment was made. After thus excluding the grounds upon which the order could be justified the Commission held that the obvious spirit and apparent purpose of the law required that the experiment should be tried, and on these premises declared that the rates resulting from the reduction of 20 per cent. would be "just and reasonable for this class of travel." It seems to us plain that the Commission was not prepared to make its order on independent grounds apart from the deference naturally paid to the supposed wishes of Congress. But we think that it erred in reading the wishes that originated the statute as an effective term of the statute that was passed, and therefore that the present order cannot stand.

*Decree affirmed.*