## WATERS v. PULLMAN CO.

(Court of Appeals of District of Columbia.
Submitted October 14, 1925. Decided
November 2, 1925.)

No. 4238.

Carriers ⊚⇒30—Railroad's concurrence in surcharge tariff schedule published for their benefit by Pullman Company may be inferred from circumstances if necessary to afford legal basis for collection (Interstate Commerce Act [Comp. St. § 8563 et seq.], as amended by Transportation Act [Comp. St. Ann. Supp. 1923, § 8563, et seq.]).

Where, on suggestion of railroads, Interstate Commerce Commission, under Interstate Commerce Act (Comp. St. § 8563 et seq.), as amended by Transportation Act (Comp. St. Ann. Supp. 1923, § 8563 et seq.), at hearing participated in by railroads and Pullman Company, authorized a 50 per cent. extra charge on sleeping and parlor car passengers for benefit of carriers, and thereafter authorized Pullman Company to publish a surcharge tariff, which it did, held, Commission did not exceed its authority in directing schedule to be filed by Pullman Company, which was to collect the tariff, and carrier's concurrence therein, if necessary, could be inferred from the circumstances.

In Error to Municipal Court of District of Columbia.

Action by James C. Waters, Jr., against the Pullman Company. Judgment for defendant, and plaintiff brings error. Affirmed.

J. C. Waters, Jr., and C. H. Hemans, both of Washington, D. C., for plaintiff in error.

B. S. Minor, H. P. Gatley, and H. B. Rowland, all of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Writ of error to the Municipal Court to recover the sum of $4.27, representing surcharges on certain fares paid by plaintiff in error for space occupied in Pullman cars. It is not disputed that these surcharges amounted to 50 per cent. of the charge of the Pullman Company for space in such cars, nor is it denied that a similar amount was collected indiscriminately from other passengers for the same service.

The Transportation Act of February 28, 1920, 41 Stat. 456 (Comp. St. Ann. Supp. 1923, § 8563 et seq.), amending the Interstate Commerce Act of February 4, 1887, 24 Stat. 379 (Comp. St. § 8563 et seq.), "imposed an affirmative duty on the Interstate Commerce Commission to fix rates and to take other important steps to maintain an adequate railway service for the people of the United States," to the end that the interstate commerce system be made "adequate to the needs of the country by securing for it a reasonable compensatory return for all the work it does." Railroad Commission of Wisconsin v. C., B. & Q. R. R. Co., 42 S. Ct. 232, 257 U. S. 563, 585, 66 L. Ed. 371, 22 A. L. R. 1086. Shortly after the passage of this act the Commission was called upon to consider the applications of carriers for authority to increase rates. Extended hearings were had, during which the railroads suggested the desirability of obtaining additional revenue from an extra charge upon passengers in sleeping and parlor cars. This suggestion met with the opposition of the Pullman Company, but the Commission, upon the theory and finding that the service enjoyed by passengers occupying space in sleeping and parlor cars represents additional value over that of passengers carried in a day coach, and a corresponding additional expense to the rail carriers, in its report, known as Ex parte 74, 58 Interst. Com. Com'n R. 220, determined that "a surcharge upon passengers in sleeping and parlor cars may be made amounting to 50 per cent. of the charge for space in such cars, such charge to be collected in connection with the charge for space, and to accrue to the rail carriers."

The evidence upon which this finding was made is not before the court, and hence is not reviewable here. The New England Division Case, 43 S. Ct. 270, 261 U. S. 184, 67 L. Ed. 605. The conclusion was not contradicted by the Commission's finding of fact, nor based upon a misconception of law, as in U. S. v. N. Y. Central R. R. Co., 44 S. Ct. 212, 263 U. S. 603, 68 L. Ed. 470.

Apparently both the rail carriers and the Pullman Company accepted the finding and order of the Commission, for the Pullman Company thereafter applied to the Commission for authority to publish and file a surcharge tariff, in accordance with the determination of the Commission. This application was granted August 13, 1920, by what is known as Special Permission No. 50400, in which was specified the manner of compliance with the order. Thereupon the Pullman Company issued and filed its Tariff I. C. C. No. 39, which remained in force until superseded by Pullman Surcharge Tariff No. 47, which likewise was published and filed under an order of the Commission, known as Special Permission No. 51382. The surcharges here challenged were collected in strict conformity with this published tariff.

Plaintiff in error, however, contends that, there being no concurrence on the part of the rail carriers with the tariff filed by the Pullman Company, there was no legal basis for the collection of this charge. But the order underlying this tariff, as we have seen, was the result of a hearing at which all the parties in interest were represented and heard, and the tariff conformed to that order. The purpose for the filing of the tariff, namely, information to the public, was subserved, and the Commission did not exceed its powers in directing that it be filed by the Pullman Company, inasmuch as the charge was to be collected by that company "in connection with the charge for space" occupied in its sleeping and parlor cars, and was "to accrue to the rail carriers." It will be observed that this was not a joint tariff, but a tariff wholly for the benefit of the rail carriers, whose concurrence therein, if necessary, well might be inferred in the circumstances.

It follows that the judgment below was right, and is affirmed, with costs.

Affirmed.