**UNITED STATES of America, Plaintiff,**

v.

**Archie SCHWARTZ, Morris Fox, Assessors of the Town of Fallsburgh, New York, Frieda Charlow, Tax Collector, Fallsburgh, New York, Town of Fallsburgh, New York, Defendants.**

**No. 66 Civ. 1285.**

United States District Court
S. D. New York.
Jan. 16, 1968.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, for United States of America; Martin Paul Solomon, Asst. U. S. Atty., of counsel.

Sakofsky & Sakofsky, South Fallsburgh, N. Y., for defendants; Charles Sakofsky, South Fallsburgh, of counsel.

## OPINION

WEINFELD, District Judge.

The plaintiff, United States of America, moves for summary judgment in this action instituted by it for a declaratory judgment that it is exempt from local real estate taxes assessed by the Town of Fallsburgh, Sullivan County, against property situated therein for the period during which the record legal title was in the Small Business Administration (Administration), a non-incorporated federal agency.[1]

The Administration authorized the Sullivan County National Bank of Liberty, New York, to make a loan of $700,000 to a hotel owner and operator located in the Town of Fallsburgh.[2] The Administration had a $350,000 participating interest in the loan; the remainder was held by the Sullivan County National Bank and other participants who acquired their interests with the consent of the Administration.

The $700,000 loan was secured by a mortgage upon the hotel and other real property. Upon default in specified installment payments a foreclosure proceeding was instituted by the Sullivan County National Bank and a sale of the premises ordered. At the sale the highest bid received was from the bank in the sum of $100,000, which transferred its successful bid to the Administration.

---

1. Small Business Act of 1953, 67 Stat. 232, as amended, 15 U.S.C. §§ 631–47.

2. 15 U.S.C. § 636(a) empowers the Administration to cooperate with banks or other lending institutions in making loans.

Pursuant thereto, the Referee in Foreclosure, on June 29, 1965, duly executed a quitclaim deed to the Administration, which remained the record owner until it sold the property on December 29, 1966. The government by this action seeks exemption from the real property taxes assessed by the defendants from the date it acquired title to the date of sale. During the period the Administration was possessed of the fee title to the property it entered into a lease for a seasonal period from July 1, 1965 to October 5, 1965, under the terms of which the lessee agreed to pay to the Administration, as the landlord, one-third of the net profits earned in the operation of the hotel during the lease period.

The defendants concede, as indeed they must, that real property owned by the Administration as an agency of the United States of America is immune from state and local taxation.[3] And apart from the general immunity of the Federal Government from state and local taxes, New York State provides an express exemption.[4] The defendants also acknowledge that the Administration may enter into leases of real property owned by it while it seeks a purchaser.[5] However, they contend that the lease arrangement under which the Administration received one-third of the net profits during the period of operation was not a "normal lease," but a joint venture, and that consequently the Administration exceeded its authority, thereby forfeiting its exemption from state and local taxes. The contention that the lease was ultra vires is entirely without substance. The sale proceeds were insufficient to meet the unpaid balance due on the loan and a deficiency judgment was entered. The Administration, in the effort to recoup part of its loss, had the right to enter into whatever arrangement it deemed feasible and best suited toward that purpose.[6] In leasing the property, whether at a fixed rental or on a percentage of income basis, or a combination of both, the Administration was exercising the right of ownership; the fact that it received a portion of the net profits derived from operation of the hotel by the lessee neither diminished its rights as the fee owner of the property, nor effected a forfeiture of its tax exempt status. Borock v. City of New York,[7] relied upon by the defendants, is clearly distinguishable upon its facts.

The defendants' further contention revolves about the fifty per cent participation in the loan held by the bank and the other investors. Here the defendants urge that even if the Administration is exempt from local taxes during the period the record title of the property was held by it, such exemption should be limited to its interest and should not extend to the fifty per cent participation of the bank and others. Under the agreement between the Administration and the bank, pursuant to which the $700,000 loan was made, all collateral was security for the respective interests of the lenders; the agreement also provided that any amounts realized from the sale of collateral shall be applied on the loan and shared ratably by the Administration

3. See Rohr Aircraft Corp. v. County of San Diego, 362 U.S. 628, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960); Lee v. Osceola & Little River Road Improvement Dist. No. 1, 268 U.S. 643, 45 S.Ct. 620, 69 L.Ed. 1133 (1925).

4. § 400(1) of the New York Real Property Tax Law, McKinney's Consol.Laws, c. 50–A, provides: "Real property owned by the United States shall be exempt from taxation, except as otherwise provided by the laws of the United States."

5. Cf. Rohr Aircraft Corp. v. County of San Diego, 362 U.S. 628, 80 S.Ct. 1050,

4 L.Ed.2d 1002 (1960); Matter of Grumman Aircraft Eng'r Corp. v. Board of Assessors, 2 N.Y.2d 500, 161 N.Y.S.2d 393, 141 N.E.2d 794, cert. denied, 355 U.S. 814, 78 S.Ct. 14, 2 L.Ed.2d 31 (1957).

6. The Administration is given express power under the Act to rent any property conveyed to or otherwise acquired by it in connection with the payment of loans. 15 U.S.C. § 634(b) (3).

7. 268 F.2d 412 (2d Cir. 1959).

and the bank in proportion to their respective interests in the unpaid principal balance. In this circumstance the defendants contend that if the Administration is entitled to exemption from taxes, it is limited to its fifty per cent ownership interest in the foreclosed property.

█ The plea must fail. A somewhat parallel contention was made in Small Business Administration v. McClellan [8] with respect to the Administration's claim of priority for its seventy-five per cent participating interest in the unpaid balance of a loan due from a borrower who had been adjudicated a bankrupt. One of the contentions was that the Administration forfeited whatever right it might have had to priority because of its agreement to turn over to the bank one-quarter of any distribution obtained by virtue of its priority position—that in effect the Administration was collecting this portion for the benefit of a private party which would place the bank, a private unsecured creditor, in a better position than other private unsecured creditors. The Supreme Court rejected the plea, holding that the fact the Administration had contracted to pay a participating private bank its proportionate share of the moneys it later collected on the loan did not work a forfeiture of the government's priority position. By a parity of reasoning, the fact that here the Administration, a fifty per cent participant in the loan, contracted to share ratably the proceeds derived from the property which, to the extent of the exempt taxes, necessarily increased the income available for distribution, does not effect a forfeiture of the Administration's immunity from local and state real estate taxes. Once the Administration acquired title to the property, its immunity attached and its contractual arrangement with other participants in the defaulted loan, upon which a balance remains due, did not void the immunity. Indeed, as the Supreme Court noted in the *McClellan* case, the governmental advantages enjoyed by the Administration serve to induce private banks and other investors to participate in loans to small business firms, thereby furthering the essential purposes of the Act.

The plaintiff's motion for summary judgment is granted.

---

8. 364 U.S. 446, 81 S.Ct. 161, 5 L.Ed.2d 200 (1960).